IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN LEE STEPP,** | ) |
| Petitioner, | ) |
| v. | ) CA 04-110E |
| | ) CR 01-40E |
| **UNITED STATES OF AMERICA,** | ) |
| Respondent. | ) |

## OPINION

COHILL, D.J.

Before the Court is Petitioner John Lee Stepp's motion for habeas corpus relief under 28 U.S.C. § 2255 and accompanying brief (Docs. 29, 30), the Government's response (Doc. 33), and Petitioner's reply (Doc. 35). Petitioner has also filed a motion to supplement his § 2255 pleadings (Doc. 38), to which the Government objects (Doc. 40).

We have jurisdiction under 28 U.S.C. § 2255. Having considered the submissions of the parties and the applicable law, for the reasons set forth below Petitioner's motion to supplement (Doc. 38) will be granted only insofar as it asks us to consider the arguments made therein, but denied on the merits, and his habeas petition (Doc. 29) will be denied on the merits.

### Background

On December 11, 2001, John Lee Stepp was charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922 (g) (1). In the incident giving rise to this charge, Stepp, Lamar Thomas, and Robert Tarver were standing in the vicinity of East 22nd Street in Erie, Pennsylvania on November 5, 2001. Stepp gave Tarver a quarter ounce of crack cocaine, to be broken down for further distribution. Another individual, Twin Beason, grabbed the cocaine from Tarver and fled. Thomas gave Stepp a handgun, and he went in search of Beason. Acting on a tip from a reliable informant, officers apprehended the men before they found Beason. Stepp and Thomas were arrested. When arrested, Thomas again had the handgun.

Stepp was given *Miranda* warnings, and agreed to talk to the authorities. He told an agent with the Federal Bureau of Investigation ("FBI") that he looked at the gun, briefly held it, and then returned it to Thomas. However, on November 20, 2001, Petitioner returned to the FBI office in Erie and gave a handwritten statement admitting that he had possessed the weapon and that he had intended to scare Beason into returning the crack.

Stepp filed a motion to suppress his statement, which was later withdrawn.

On August 12, 2002, Stepp pled guilty. The presentence report ("PSR") concluded that Petitioner had a total offense level of 25, and a criminal history category of IV. The PSR recommended that the offense level be increased by four points, under U.S.S.G. § 2k2.1 (b) (5), for possession of a gun "in connection with" a drug transaction. Thus the guideline sentencing range was 84 to 105 months imprisonment.

At the sentencing hearing, Stepp objected to this four point increase. The argument was denied, and the Court found that it was "clear and logical" that "in the normal parlance and certainly within the intent of the Sentencing Guidelines," Stepp possessed the firearm "in connection with" the distribution of crack cocaine. Stepp was sentenced to a term of 90 months imprisonment, to be followed by three years of supervised release.

Stepp appealed. The Court of Appeals for the Third Circuit affirmed the sentence on May 20, 2003, and the certified copy of the mandate issued on July 11, 2003. In its unpublished decision, the Court of Appeals explained:

> Stepp obtained the gun specifically to scare Beason and get the cocaine back from him. This was "in connection with" Stepp's drug transaction with Tarver. Had it not been for the drug transaction, Stepp would not have pursued Beason with the gun . . . . Therefore, Stepp possessed a gun "in connection with" the drug transaction, even though he obtained it after the drug transaction was completed.

*United States v. Stepp*, 67 Fed. Appx. 107, 108 (3d Cir. 2003).

Stepp did not seek a grant of *certiori* from the United States Supreme Court. Thus his conviction became final when the 90 day period for seeking such review expired, or on

2

October 9, 2003.

On April 13, 2004, Stepp timely filed a motion to vacate or correct his sentence under 28 U.S.C. § 2255. Subsequently, Petitioner filed a motion to supplement (Doc. 38), seeking leave to amend his motion based upon the United States Supreme Court's decision in *Blakely v. Washington*, 124 S.Ct. 2531 (2004). The motion was denied by Order dated September 2, 2004, but without prejudice to Stepp's right to refile "should the United States Supreme Court determine that *Blakeley* does in fact apply retroactively to individuals in the Petitioner's position . . . . " (Doc. 37).

On February 14, 2005, Stepp filed a motion to supplement his motion to vacate, based on the Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), which held that the Sentencing Guidelines are advisory, not mandatory. (Doc. 38). The Government has filed a brief in opposition to that motion. (Doc. 40).

## Discussion

### Motion to Supplement § 2255 Pleadings under *Booker*

Stepp's motion to supplement relies on *United States v. Booker*, 125 S.Ct. 738 (2005). His basic argument is that this court violated *Booker* at his sentencing hearing when it found that the 302 report was reliable. (Doc. 38 at 1). He seeks leave to make this argument under Fed. R. Civ. P. 15(a), which provides that leave to amend "shall be freely given when justice so requires" so as to enable a party "to assert matters that were overlooked or unknown" at the time of the original filing.

The Government argues that this motion is procedurally barred.

However, we denied Stepp's previous motion to supplement without prejudice to refiling, and, with the deference due a *pro se* petitioner, we will consider the substance of the motion to supplement presently before us.

### Petitioner's *Booker* Claim

Petitioner's position is that this court applied a faulty preponderance of the evidence

3

standard at sentencing, and, therefore, his sentence should be vacated because it was improperly enhanced under *Booker*. This argument, however, is without merit.

The background to the *Booker* decision is *Blakely v. Washington*, 124 S.Ct. 2531 (2004). In that case, the United States Supreme Court concluded that the application of a Washington state sentencing statute violated the Sixth Amendment because certain sentencing facts were determined by a judge, using a preponderance of the evidence standard, and not by a jury. The Supreme Court concluded that this statutory scheme violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which held that any fact which increases a statutory maximum sentence must be found beyond a reasonable doubt by a jury. Under *Blakely*, the statutory maximum sentence "is the maximum a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" 124 S.Ct. at 2537) (emphasis in original).

*Blakeley* addressed a state sentencing scheme. Subsequently, in *Booker*, the Supreme Court held that the same principles apply to the federal sentencing guidelines. The Court severed the relevant provision from the statute, which rendered the rest of the guidelines advisory only.

*Booker*, however, does not apply retroactively to cases such as Stepp's. In *Lloyd v. United States*, the Third Circuit agreed with all other courts of appeals that had considered the issue, and held that *Booker* announced a new rule of criminal procedure that does not apply retroactively under *Teague v. Lane*, 489 U.S. 288 (1989), to convictions that were final before January 23, 2005, the date *Booker* was decided. *Lloyd*, 407 F.3d 608, 614 (2005) *cert. denied*, 126 S.Ct. 288 (2005).

The PSR prepared in this case recommended a four-level increase in Petitioner's offense level under U.S.S.G. § 2K2.1 (b) (5), for using or possessing a firearm in connection with a drug trafficking offense. (PSR ¶ 17). This court concluded that he had possessed a weapon in connection with the crime, applied this four-level increase, and sentenced Stepp to a term of

4

imprisonment of 90 months. Petitioner's argument that this enhancement violates *Booker* is without merit. Petitioner's conviction was final as of October 9, 2003, long before the Supreme Court's decision. Therefore, his argument that his sentence violates *Booker* must be denied.

**Petitioner's *Crawford* Claim**

As we have said, the PSR recommended a four-level increase in Petitioner's offense level under U.S.S.G. § 2K2.1 (b) (5), for using or possessing a firearm in connection with a drug trafficking offense. (PSR ¶ 17). At sentencing, the Court applied this four-level increase based on Stepp's handwritten statement and an FBI FD-302 report detailing the information made in that statement, both of which were introduced by the Government. Petitioner objected to the use of the 302 report as hearsay, and the objection was denied. On direct appeal, Stepp argued that he did not possess the gun "in connection with" the drug transaction. The sentence was affirmed.

Petitioner argues that using this report at sentencing, without any witness testimony, violated his right to confront and cross-examine a witness under *Crawford v. Washington*, 541 U.S. 36 (2004). We agree with the Government that this claim is barred by *Teague v. Lane*, which held that habeas relief should not be granted by the federal courts where a petitioner relies on a new rule of constitutional law that came into existence after the conviction was final. 489 U.S. at 316. As the Government's brief predicted, the United States Supreme Court has recently held that *Crawford* announced a "new rule" of procedural law which is not a watershed rule of criminal procedure, and therefore does not apply retroactively to defendants, such as Petitioner, whose convictions were final on March 8, 2004 when *Crawford* was decided. *Whorton v. Bockting*, 541 U.S. 36 (2007). Accordingly, we will dismiss Petitioner's claim in this regard without further discussion.

**Conclusion**

We have granted Petitioner's motion to supplement and have considered the arguments made therein, and have concluded that they are without merit. Therefore, for the reasons set

forth above, Stepp's § 2255 petition shall be dismissed.

The right to appeal the dismissal of a habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), which provides that no certificate of appealability shall issue unless the Petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2255 (c). No such showing has been made in this case, and no certificate of appealability shall issue. An appropriate Order follows.

September 24, 2007
Date

Maurice B. Cohill, Jr.
Senior United States District Judge

6